UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEWART D. BROWN,

                Plaintiff,

v.                                                              Case No. 19-cv-1762-bhl

CORY ROESELER, et al.,

                Defendants.

## ORDER SCREENING AMENDED COMPLAINT

On October 6, 2020, the Court screened plaintiff Stewart D. Brown's *pro se* complaint filed under 42 U.S.C. §1983, concluded that it failed to state a claim, and ordered him to file an amended complaint by November 5, 2020. (ECF No. 11.) On October 23, 2020, the Court granted Brown's motion to stay this case because, he asserted, he was unable to litigate the case due to an indefinite lockdown at his prison. (ECF No. 14.) Despite the purported lockdown, Brown submitted an amended complaint well in advance of the deadline. (ECF No. 15.) The stay is therefore **LIFTED**, and the amended complaint is before the Court for screening.

### Screening Standard

As explained in the previous order, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the Court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The amended complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law.  *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).  The Court construes liberally complaints filed by plaintiffs who are representing themselves.  *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

**Background Allegations**

Brown's amended complaint is nearly identical to his original complaint.  He asserts claims against the same three defendants named in his original complaint, Sheboygan County Sheriff Cory Roeseler and medical officers Dr. John Doe and Nurse Jane Doe at the Sheboygan County Detention Center.  (ECF No. 15 at 2.)  His hand-written allegations are mostly identical to the typed allegations in his original complaint, and, having detailed them in the earlier screening order, the Court will not recount them here. (*See* ECF No. 11 at 3–4.)

The only differences are that in his original complaint, Brown alleged that "jail officials" told him they had spoken with his specialist, Dr. Welsch, about Brown's need for treatment of his prostate cancer by the end of summer 2018.  (ECF No. 1 at 5.)  In his amended complaint, Brown alleges that Dr. John Doe and Nurse Jane Doe were the "jail officials" who spoke with Dr. Welsch about Brown's cancer treatment.  (ECF No. 15 at 4.)  Brown states he asked Dr. John Doe and Nurse Jane Doe about his treatment over the summer months and was told only that he "had plenty of time and that appointment would be scheduled." (*Id.* at 4–5.)  Brown also newly alleges that he sent a letter to Sheriff Roeseler, but that letter "went unanswered." (*Id.* at 5.)  Brown reiterates that he never received treatment, and now his only options are chemotherapy or surgery. (*Id.* at 5–6.)  He seeks declaratory relief and monetary damages. (*Id.* at 7.)

2

**Analysis**

As previously explained, the Court analyzes Brown's claims under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). To state a valid Eighth Amendment claim, Brown must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776 (citing *Farmer*, 511 U.S. at 837). A delay in treatment also may constitute an Eighth Amendment violation, "if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

Although Brown's allegations are spare, he has alleged just enough to avoid dismissal of his Eighth Amendment claim against Dr. John Doe and Nurse Jane Doe. He alleges that these defendants spoke with his specialist and knew of his need for prompt treatment but then failed to provide any treatment. His allegation that their delay and disregard worsened Brown's cancer, which now requires more significant treatment than it did while he was in prison in the summer 2018, is sufficient to allow Brown to proceed on his claims against them.

The Court will not permit Brown to proceed on his claim against Sheriff Roeseler, however. Brown cannot maintain a claim against Roeseler merely because he is the Sheriff of Sheboygan County. *See Iqbal*, 556 U.S. at 676. Brown instead must allege that Roeseler was personally involved in his delayed treatment or, at least, was aware of the delay in treatment and facilitated, approved, condoned, or knowingly ignored it. *Id.*; *see Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Brown's only allegations against Roeseler are that he wrote a letter to the Sheriff that went unanswered. He does not explain the contents of that letter or allege that Sheriff Roeseler was aware of Brown's condition and delayed treatment but failed to act. Brown's allegations do not state a claim against Sheriff Roeseler.

Because Brown does not know the names of the defendants he is suing, the Court will keep Sheriff Roeseler as a defendant for the limited purpose of helping Brown identify the names

3

of the Doe defendants.  *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996).  Sheriff Roeseler does not have to respond to the amended complaint.  After Sheriff Roeseler's attorney files an appearance in this case, Brown may serve discovery upon Sheriff Roeseler (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the Doe defendants.

For example, Brown may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34.  Because Brown does not state a claim against Sheriff Roeseler, Brown's discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing.  Brown may not ask Sheriff Roeseler about any other topic, and Sheriff Roeseler is under no obligation to respond to requests about any other topic.

After Brown learns the names of the people he alleges violated his constitutional rights, he must file a motion to substitute their names for the John and Jane Doe placeholders.  The Court will dismiss Sheriff Roeseler as a defendant once Brown identifies the Doe defendants' names.  After the Doe defendants have an opportunity to respond to Brown's amended complaint, the Court will set a deadline for discovery.  At that point, Brown may use discovery to get the information he believes he needs to prove his claims.

Brown must identify the names of the Doe defendants **within 45 days** of Sheriff Roeseler's attorney appearing.  If he does not, or does not explain to the Court why he is unable to do so, the Court may dismiss his case based on his failure to diligently pursue it.  Civil L. R. 41(c).

## Motion for Recruitment of Counsel

Brown also requests that the Court recruit counsel to represent him in this action.  (ECF No. 17.)  He requests counsel because he cannot afford to hire an attorney, his case involves complex issues (including medical issues) requiring "significant research and investigation," and providing him counsel "would promote justice in that it would balance the scales and promote an atmosphere for the expedient resolution of this matter."  (*Id.*)  He attached letters from four attorneys or firms who declined to represent him in this matter.  (*Id.* at 3–6.)

In a civil case, the Court has the discretion to recruit counsel for individuals unable to afford counsel.  *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).  "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but

4

there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the Court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. *Pickett*, 930 F.3d at 871. In deciding whether to recruit counsel, the Court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. *Id.* The Court should also consider how well the plaintiff articulated his case to the prospective lawyer. *Id.* Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. *Id.* But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." *Id.*

When considering the second element, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490–491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity,

5

psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett*, 930 F.3d at 871.

Brown satisfies the first *Pruitt* element, but he cannot satisfy the second. Brown's pleadings to date show he has a firm grasp of the events alleged and an understanding of his constitutional claims against the defendants. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change, or he may find himself unable to obtain the information he believes he needs to prove his claims. Should that occur, it may be appropriate to recruit counsel to represent Brown. At this early stage of the proceedings, however, it is impossible to tell whether Brown requires the assistance of counsel to present his case. The Court will deny Brown's request for recruitment of counsel without prejudice.

## Conclusion

The Court **LIFTS** the stay previously entered in this case. (ECF No. 14.)

The Court **DENIES** Brown's request for recruitment of counsel. (ECF No. 17.)

The Court **ORDERS** that Sheboygan County Sheriff Cory Roeseler be **SUBSTITUTED** on the docket for "Cory Roeseler" for the limited purpose of helping Brown identify the Doe defendants.

The Court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Sheboygan County Sheriff Cory Roeseler under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for either the Court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give Brown information on how to remit payment. The Court is not involved in collection of the fee.

The Court **ORDERS** that Sheriff Roeseler does not have to respond to the amended complaint; however, he shall respond to discovery requests that Brown serves in an effort to identify the Doe defendants' names. Sheriff Roeseler does not have to respond to discovery requests about any other topic.

6

The Court **ORDERS** that Brown must identify the Doe defendants' names **within 45 days** of Sheriff Roeseler's attorney filing an appearance in this case. If Brown does not identify the Doe defendants' names by the deadline, or advise the Court why he is unable to do so, the Court may dismiss this case based on his failure to diligently prosecute it.

The Court will send a copy of this order to the officer in charge of the agency where Brown is confined.

The Court **ORDERS** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

The Court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The Court reminds Brown that if he fails to file documents or take other required actions by the deadlines the Court sets, the Court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. Brown is reminded that it is his responsibility to promptly notify the Court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or transferred to a different institution.  Brown's failure to keep the Court advised of his whereabouts may result in the Court dismissing this case without further notice.

Dated at Milwaukee, Wisconsin this 18th day of December, 2020.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge